[Nos. 26165-7-I; 26341-2-I.   Division One.   July 29, 1991.]

RONALD H. ROBINSON, ET AL, *Respondents,* v. DAVID M.
HAMED, ET AL, *Appellants,* THE BOEING
COMPANY, ET AL, *Respondents.*

*John E. Glowney* and *Stoel Rives Boley Jones & Grey,* for appellants.

*Larry B. Hannah, Joan C. Clarke,* and *Perkins Coie,* for respondents The Boeing Company, et al.

*William W. Hague* and *Monroe, Stokes, Eitelbach & Lawrence,* for respondents Robinson, et al.

FORREST, J. — Hamed appeals summary judgments dismissing his claims of defamation, tortious interference, aiding and abetting a tort, and ratification against Robinson, Jones and Boeing.[1] Hamed also claims the court erred in denying certain discovery requests and refusing to hear his motion for reconsideration. The defendants cross-appeal claiming the court should have granted a motion for summary judgment based on collateral estoppel.

---

[1]Robinson, Jones and Boeing, when referred to collectively, will be "the defendants".

On March 14, 1987, David Hamed and Ron Robinson engaged in an altercation at the Sea-Tac Airport customs terminal. Hamed and Robinson were strangers at the time, although they both were returning from business trips for their common employer, the Boeing Company. Their opposing versions of the altercation have resulted in a criminal trial, a labor arbitration, an unemployment compensation hearing and this case.

It is undisputed that Robinson struck Hamed from behind with a luggage carrier and that Hamed struck Robinson, breaking his jaw. Hamed claims Robinson was careless and reckless in handling his luggage carrier, became verbally abusive, charged Hamed, at which point he hit Robinson in self-defense. Robinson claims he bumped Hamed with the cart accidentally, he immediately apologized, and Hamed threatened to "meet him outside". Robinson felt he had to resolve the matter immediately so he approached Hamed, with his hands to his side to discuss the matter, and Hamed struck him without provocation.

Robinson and Hamed gave statements to the Port of Seattle police and British Airways personnel. Hamed was charged with criminal assault.[2] Hamed reported the incident to his superiors upon returning to work. Robinson reported the incident to Boeing security. Jerry Jones was assigned by Boeing to investigate the matter. After investigation and discipline review, Boeing terminated Hamed on May 12, 1987.

Hamed filed a grievance challenging his termination. On October 15 and 26, 1987, Hamed's union, Seattle Professional Engineering Employees Association (SPEEA), and Boeing arbitrated Hamed's termination pursuant to their collective bargaining agreement (CBA). The arbitrator ruled in January 1988 that Boeing had "just cause" to terminate Hamed.

---

[2]Hamed was convicted in a district court bench trial. The court vacated the judgment for error in denying Hamed a jury trial. Ultimately, the charges were dismissed for violation of the speedy trial rule.

In August 1987 Robinson filed a civil assault claim against Hamed. Hamed counterclaimed, alleging defamation and tortious interference, and later added Jerry Jones and Boeing as third party defendants. On June 1, 1989,[3] Judge Noe dismissed Hamed's claims of wrongful termination, tortious interference and "independent contract" claims against Boeing together with his claims of tortious interference against Robinson and Jones, for acts within the scope of their employment. On May 26, 1989, the defendants' motion to dismiss Hamed's defamation claim, on the basis of collateral estoppel, was denied. On January 29, 1990, Hamed was permitted to amend his complaint, adding claims against Boeing for "aiding and abetting" and "ratification" of a tort, and tortious interference claims against Jones and Robinson for acts allegedly outside the scope of their employment. On April 11, 1990, Judge Burdell dismissed all remaining claims against all of the defendants. Robinson's original claim against Hamed for assault and battery was remanded to the Issaquah District Court.

On April 13, 1990, Judge Burdell signed an order pursuant to CR 54(b), certifying the April 11, 1990, summary judgment as a final judgment for purposes of appeal. The parties also agreed the court's order remanding Robinson's claim for trial would be stayed pending appeal of the summary judgment. On April 13, 1990, Judge Burdell resigned from the bench. On April 18, 1990, Hamed served Judge Burdell's successor with a motion for reconsideration. Judge Pechman refused to consider the motion. On May 8, 1990, Hamed filed a notice of appeal of the April 11 summary judgment in this court. Defendants cross-appealed denial of their summary judgment motion.

On May 11, 1990, Hamed's motion to assign a judge to hear his motion for reconsideration was denied by

---

[3]June 1, 1989, is the date the order is entered, although the issue was argued April 21, 1989.

Presiding Judge Johnson. A similar motion to assign a judge pro tempore was also denied May 25, 1990. Hamed appealed the superior court decisions refusing to consider his motion for reconsideration on June 11, 1990. Pursuant to an order by Commissioner Ellis, Hamed's appeals were consolidated.

Hamed makes the following assignments of error: (1) dismissal of Hamed's breach of contract claims against Boeing based on obligations outside the collective bargaining agreement; (2) dismissal of Hamed's claims for defamation, tortious interference with contract, ratification and aiding and abetting a tort; (3) the trial court's denial of discovery depositions of Boeing employees Bruce Gissing, Ron Kraft and Ron Lawson and limiting other discovery requests; (4) the denial of his request for hearing on a motion for reconsideration. The defendants cross-appeal from the trial court's denial of their motion for a summary judgment asserting that Hamed is collaterally estopped from relitigating the truth of Robinson's version of the altercation by reason of the arbitration decision. We find Hamed was collaterally estopped and affirm the trial court's dismissal of Hamed's claims.

## COLLATERAL ESTOPPEL

Robinson asserts that Hamed is collaterally estopped[4] from relitigating the issue of the truth of Robinson's statements concerning the airport incident by reason of the decision in the arbitration proceeding.

■ ■ Contrary to Hamed's claim, it is well settled that in an appropriate case the decision in an arbitration proceeding may be the basis for collateral estoppel or

---

[4]The term "issue preclusion" is preferable, in that the doctrine of collateral estoppel differs from res judicata, or "claim preclusion", in that, "instead of preventing a second assertion of the same claim or cause of action, collateral estoppel prevents a second litigation of issues between the same parties even in connection with a different claim or cause of action." *King v. Seattle*, 84 Wn.2d 239, 243, 525 P.2d 228 (1974).

issue preclusion in a subsequent judicial trial.[5] Hamed's assertion that doing so deprives him of his right to trial by jury is totally without merit. The United States Supreme Court has specifically rejected this claim in *Parklane Hosiery Co. v. Shore*,[6] holding that a party's right to jury trial is not infringed by the application of collateral estoppel based on a factual finding in a previous nonjury case. In *Benjamin v. Traffic Executive Ass'n Eastern R.R.*,[7] the court applied the same reasoning specifically to facts determined in a prior arbitration proceeding. We agree with the court in *Benjamin* that: " '[P]reclusion may not be defeated simply by showing that there was no right to trial by jury in the first action and that there is a constitutional right to trial by jury in the second action, no matter what anguish that may cause to those who believe in juries.' " *Benjamin*, at 114 (quoting 18 C. Wright, A. Miller & E. Cooper, *Federal Practice* § 4465, at 600 (1981)).

Hamed's reliance on *McDonald v. West Branch*[8] and *Alexander v. Gardner-Denver Co.*[9] is misplaced. In these cases the Court's refusal to give preclusive effect to the arbitrator's decision was based on congressional intent to invest the courts with power to adjudicate civil rights claims and the decision was limited to the specific

---

[5]*See, e.g., Sullivan v. American Airlines, Inc.*, 613 F. Supp. 226, 230 (S.D.N.Y. 1985); *Fulghum v. UPS, Inc.*, 424 Mich. 89, 378 N.W.2d 472 (1985). *Benjamin v. Traffic Executive Ass'n Eastern R.R.*, 869 F.2d 107 (2d Cir. 1989); *cf. Shoemaker v. Bremerton*, 109 Wn.2d 504, 745 P.2d 858 (1987). The court held that the factual determination by a civil service commission could properly be used as a basis for collateral estoppel in a subsequent civil rights case. Although the jury issue is not discussed, a necessary predicate of the court's decision is that such use would not deprive the plaintiff of his right to jury trial. *See also* Restatement (Second) of Judgments § 84, comment *c* (1980).

[6]439 U.S. 322, 58 L. Ed. 2d 552, 99 S. Ct. 645 (1979).

[7]869 F.2d 107 (2d Cir. 1989).

[8]466 U.S. 284, 80 L. Ed. 2d 302, 104 S. Ct. 1799 (1984).

[9]415 U.S. 36, 39 L. Ed. 2d 147, 94 S. Ct. 1011 (1974).

statutory and constitutional claims in question.[10] The Supreme Court has since made this position clear, and has retracted its apparent mistrust of the arbitral process.[11] In *Fulghum v. UPS, Inc.,*[12] on facts similar to those here present, the Michigan Supreme Court distinguished *Alexander* and *McDonald* on this basis, holding that the factual finding involved was not of statutory or constitutional magnitude but was instead a simple question of fact clearly within the arbitrator's competence.[13] No Washington case has directly approved the use of an arbitration proceeding as the basis for collateral estoppel in a subsequent lawsuit. However, in a closely analogous situation in *Shoemaker v. Bremerton,*[14] the court approved the use of a civil service commission proceeding as a basis for collateral estoppel in a subsequent lawsuit. Based on the foregoing authorities, we hold that a party to an arbitration proceeding may be precluded from relitigating the same issue in a subsequent lawsuit.

■ We now examine the propriety of applying the arbitration proceeding as collateral estoppel to Hamed's defamation claim. For collateral estoppel to apply, the defendants must show that: (1) the issue decided in the arbitration is identical with the one presented in the court

---

[10]"Consequently, according preclusive effect to arbitration awards in § 1983 actions would severely undermine the protection of federal rights that the statute is designed to provide." *McDonald*, at 292. "In sum, Title VII's purpose and procedures strongly suggest that an individual does not forfeit his private cause of action if he first pursues his grievance to final arbitration under the nondiscrimination clause of a collective-bargaining agreement." *Alexander*, at 49.

[11]*See Gilmer v. Interstate/Johnson Lane Corp.*, ___ U.S. ___, 114 L. Ed. 2d 26, 111 S. Ct. 1647 (1991) (holding that Age Discrimination in Employment Act of 1967 claims may be subjected to compulsory arbitration).

[12]424 Mich. 89, 378 N.W.2d 472, 473 (1985).

[13]In *Alexander* the Court noted that where the issue is a simple factual determination, the court could give it great weight. *Alexander*, at 60 n.21.

[14]109 Wn.2d 504, 745 P.2d 858 (1987).

action, (2) the prior arbitration ended in a final decision on the merits, (3) Hamed was a party or in privity with a party in the arbitration, and (4) application of the doctrine does not work an injustice.[15] Hamed urges a number of reasons why it may be unjust or inappropriate to give preclusive effect to the arbitrator's finding that Robinson was telling the truth as to the facts of the incident. We find none persuasive.

1. The issue decided in the arbitration is identical with the one presented in the court action. Hamed asserts that the arbitrator only determined that Hamed acted in an "uncivil" or "unreasonable" manner as proscribed in the CBA while the defamation claim is based on a false account of the physical altercation. He further points out that the arbitrator did not pass on intent, privilege or injury elements basic to the defamation claim. He contends, therefore, that the "ultimate facts" are dissimilar and issue preclusion improper.

The arbitrator did not address the issues of Robinson's intent or privilege, but he did specifically address the issue of which version of the events at the airport was true. While the applicable rules of the CBA are broad, the arbitrator examined a narrow set of facts to determine what actually occurred at the airport. The issue of who was telling the truth was essential to the arbitrator's decision.[16] If Robinson was found to be lying the arbitrator would not have to evaluate Boeing's conduct further. The discharge would be unjust. Instead, the arbitrator stated,

> Taking all of the evidence into account, the arbitrator concludes that the weight of the evidence supports the version of events presented by Mr. Robinson. . . . The grievant's version, on the other hand, is inherently implausible and is not supported by the testimony of the Light family, although they were offered as witnesses for the grievant.

---

[15]*McDaniels v. Carlson*, 108 Wn.2d 299, 738 P.2d 254 (1987).

[16]The arbitrator stated that "the basic question is who was the aggressor in this matter. To resolve this question, the arbitrator must resolve the conflict in the testimony between Hamed and Robinson."

Whether Robinson was telling the truth was an ultimate fact in the arbitrator's decision just as it would necessarily be in the defamation action.

2. There is no dispute that the arbitrator's decision was a final decision on the merits of Hamed's dismissal. A formal written decision was issued which, while not following the format of findings and conclusions as used in judicial decisions, directly addressed and resolved the necessary factual issues.

3. Hamed was a party or in privity with a party to the arbitration. While Hamed's union, SPEEA, and not Hamed was the named party to the labor arbitration, Hamed was the real party in interest and the sole issue in the hearing was the propriety of Hamed's discharge. Having invoked the arbitration proceeding to vindicate his rights, he cannot now claim that he was not in privity with his union and bound by the results.[17] Additionally, there is no doubt that Robinson and Jones, nonparties to the arbitration, may use collateral estoppel defensively against Hamed.[18]

4. The application of collateral estoppel must not work an injustice. This requirement focuses primarily on whether the prior adjudication offered a full and fair hearing on the issue.[19] Hamed's claim was the subject of a 2-day arbitration proceeding. The parties made opening statements, introduced 36 exhibits, examined and cross-examined witnesses and made closing arguments. The general counsel for the union submitted an extensive posthearing brief and the arbitrator entered exhaustive findings supporting his conclusions. The proceedings clearly furnished a full and fair hearing.

---

[17] *See Acree v. Air Line Pilots Ass'n*, 390 F.2d 199, 203 (5th Cir.), *cert. denied*, 393 U.S. 852 (1968). *See also Dunlap v. Wild*, 22 Wn. App. 583, 591 P.2d 834 (1979).

[18] *Dunlap*, at 589.

[19] *Dunlap*, at 591.

Hamed asserts certain defects not apparent on the face of the arbitration should prevent issue preclusion. We do not agree. Hamed's vague suggestion that the union may have had some other interest or purpose in mind is not substantiated by the record. As the defendants point out, the union had a duty to represent Hamed fairly and, if he believed the union failed in this duty, he would have a claim against it.[20] The record fails to substantiate any specific instance of ineffective representation.

Hamed asserts that he was prejudiced because he was not represented by his own counsel. The record does not establish any request on his part for such representation. He was represented by a union contract administrator and the general counsel for the union. He fails to give any specific example or cite any portion of the record to establish any prejudice by such representation.

Hamed also complains of a lack of discovery through deposing Boeing witnesses. However, he fails to show how this affects the arbitrator's decision regarding the facts of the altercation, which is the controlling issue on this appeal. Robinson and customs agent Mesaros, the crucial witnesses to the events, testified at Hamed's criminal trial and unemployment hearing prior to the arbitration and were subject to cross examination by his counsel on those occasions. The additional witnesses that Hamed claims corroborate his version of events testified at the arbitration, as well as his criminal trial, and the union's posthearing brief focused on this testimony. What better discovery of the decisive witnesses could you have? Hamed has failed to show any possible prejudice from the lack of discovery.

■ Hamed argues that it is unjust to apply collateral estoppel because he was not permitted to bring his defamation claim in the arbitration. This argument confuses claim and issue preclusion. In this case the defendants do not argue that the arbitrator decided the defamation

---

[20]*Vaca v. Sipes*, 386 U.S. 171, 194, 17 L. Ed. 2d 842, 87 S. Ct. 903 (1967).

claim, but that in making his decision the arbitrator resolved against Hamed a fact question that is essential to his defamation claim. The fact that an arbitrator may not be empowered to decide other legal claims does not prevent preclusive effect being given to the factual determination. In *Shoemaker*, a city civil service commission determined after a hearing that Shoemaker, a city employee, had been demoted for "cause" and that the demotion was neither retaliatory nor made in bad faith. The court held that the commission's factual determinations regarding retaliation were entitled to collateral estoppel effect barring the plaintiff's subsequent civil rights claims.[21] Under similar circumstances the Michigan Supreme Court in *Fulghum* gave preclusive effect to the arbitrator's decision in a subsequent defamation action.

The cases cited by Hamed are not persuasive. In *Nichols v. Snohomish Cy.*[22] the court held that the issue in the civil service commission proceeding was whether the sheriff could rightfully terminate Nichols's employment. This was denied preclusive effect as to Nichols's right to reemployment under RCW 73.16.033 because no facts found by the commission were at issue determining Nichols's reemployment rights.[23] Here, we have no independent statutory cause of action, and the same facts found by the arbitrator are at issue. The defamation

---

[21]"Shoemaker argues that the Commission could not have determined the same issue as that presented in the civil rights suit because the Commission had no authority to consider the constitutionality of the City's actions. As noted above, he argues that the Commission acted beyond its competence for the same reason. These arguments confuse claim and issue preclusion. While the Commission could not have adjudicated the section 1983 claim . . . it may have decided an issue of fact that is common to both Shoemaker's petition for reinstatement before the Commission and to his section 1983 claim. If it did, and if the adjudication was adequate . . . then the issue has been decided for all purposes." *Shoemaker*, at 512.

[22]109 Wn.2d 613, 746 P.2d 1208 (1987).

[23]It is significant that *Nichols* was decided subsequent to *Shoemaker* and clearly found no inconsistency.

claim and Hamed's discharge both turn on the truth of Robinson's account of the events. In *Ward v. Torjussen*[24] the court refused to apply collateral estoppel primarily because the appellant was not a party or in privity with the party to the preceding action. In *State Farm Mut. Auto. Ins. Co. v. Amirpanahi*,[25] the court denied preclusive effect to an arbitration decision because there was a dollar limit on the arbitrator's award by the terms of the arbitration agreement and accordingly damage claims in excess thereof were not fully adjudicated in the proceeding. Here, the arbitrator was not authorized to award damages for defamation, but he was fully authorized to resolve the truth between Hamed and Robinson as to the events at the airport.[26]

We conclude that Hamed had a full and fair opportunity to litigate the truth of Robinson's statements and he is now bound by the arbitrator's resolution of that issue.[27] The denial of Robinson's summary judgment motion on collateral estoppel was in error and, truth being a defense to defamation, Hamed's defamation claims fail.

### REMAINING CLAIMS

Our holding mandates dismissal of all claims against Boeing based on the alleged falsity of Robinson's account of the incident. It also includes dismissal of the tortious

---

[24]52 Wn. App. 280, 758 P.2d 1012 (1988).

[25]50 Wn. App. 869, 751 P.2d 329, *review denied*, 111 Wn.2d 1012 (1988).

[26]Hamed also cites *Tellez v. Pacific Gas & Elec. Co.*, 817 F.2d 536, 538-39, *cert. denied*, 484 U.S. 908 (9th Cir. 1987), asserting that if arbitrators lack authority to hear state law claims it would be unjust to apply collateral estoppel. The court in *Tellez* did not address collateral estoppel, but preemption of state law claims under § 301 of the Labor Management Relations Act, 1947.

[27]While the judge's decision in the criminal trial has no legal effect as to collateral estoppel since it did not become a final conviction, it is strong support for the fairness of the arbitrator's decision that in applying a higher standard of beyond a reasonable doubt, the judge also concluded that Robinson's version was true.

interference claim against Robinson for acts allegedly outside the scope of his employment.[28] Hamed also asserts a vague and tenuous claim against Jones for acts outside the scope of his employment, and against Boeing for ratifying or aiding and abetting such conduct. The record does not establish any acts by Jones outside the scope of his employment. In any event, Boeing's decision to terminate Hamed's employment was upheld in the arbitration hearing so any defects in the preliminary investigation are immaterial. Judge Noe did not err in addressing Hamed's non-CBA claims that Boeing failed to discipline other employees. The issue was properly before him in connection with the defendant's summary judgment motion and was thoroughly briefed and argued.

In light of the collateral estoppel ruling we need not address Hamed's asserted errors in regard to the discovery process or the denial of his motion for appointment of a judge to hear his motion for reconsideration after Judge Burdell's resignation.

### SUMMARY OF RULINGS

Judge Noe was correct in addressing Hamed's independent non-CBA contract claims and in his rulings thereon. Robinson's motion for summary judgment on the basis of collateral estoppel was erroneously denied by Judge Ramerman. None of Hamed's assignments of error to procedural rulings have merit nor do they affect the outcome of the case. Judge Burdell's order granting summary judgment dismissing plaintiff's remaining claims is affirmed.[29]

---

[28]Counsel admitted at oral argument that Robinson could properly report the incident to Boeing if he was reporting truthfully.

[29]Although he erred in dismissing the defendant's defamation claim on the basis of conditional privilege, see *Lawson v. Boeing Co.*, 58 Wn. App. 261, 792 P.2d 545 (1990), *review denied,* 116 Wn.2d 1021 (1991), we affirm on the basis of collateral estoppel. *Wendle v. Farrow,* 102 Wn.2d 380, 382, 686 P.2d 480 (1984) (appellate court may affirm a trial court decision on any grounds supported by the record).

The dismissals of Hamed's claims are affirmed and the case is remanded for trial of Robinson's claim against Hamed for damages flowing from the assault.

WEBSTER, A.C.J., and BAKER, J., concur.

Review denied at 118 Wn.2d 1002 (1991).