# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| JOSHUA BILLINGS, individually, | No. 49631-3-II |
| Appellant, | |
| v. | |
| TOWN OF STEILACOOM, a municipal corporation, RONALD SCHAUP, individually, and PAUL LOVELESS, individually, | UNPUBLISHED OPINION |
| Respondents. | |

MELNICK, J. — Joshua Billings appeals the trial court's order granting summary judgment to the Town of Steilacoom, Police Chief Ronald Schaub, and Town Administrator Paul Loveless, and striking a declaration. We conclude that the trial court did not err. We affirm.

FACTS

I.     BACKGROUND

From December 10, 2001 to September 25, 2012, Billings worked for the Town of Steilacoom Public Safety Department. On May 8, 2012, Steilacoom demoted Billings from the rank of Sergeant to Public Safety Officer (PSO). PSOs served dual roles as police officers and firefighters under the supervision of the Director of Public Safety (DPS), known as the "Police Chief." Clerk's Papers (CP) at 113. From October 18, 2010 until November 5, 2015, Schaub served as Police Chief. He reported to Loveless.

Following several internal affairs investigations, Schaub concluded Billings violated numerous policies and demonstrated a pattern of poor performance. Schaub recommended terminating Billings. Mayor Ron Lucas and Loveless agreed.

At the time the investigation concluded, Billings was off work due to a hand injury. Steilacoom waited until Billings's doctor released him to return to duty before moving forward with the termination. On September 25, 2012, Steilacoom terminated Billings's employment.

On October 2, Billings, assisted by the Steilacoom Officers' Association (SOA), filed a grievance opposing his demotion and termination. After Steilacoom denied the grievance, the SOA requested arbitration pursuant to the applicable Collective Bargaining Agreement (CBA). The CBA provided: "Employees shall be disciplined for just cause with the exception of employees during their initial trial period, in which case a demonstration of cause is not required. Disciplinary action may include written reprimand, suspension without pay, reduction in rank, or discharge." CP at 149.

II.    ARBITRATION PROCEEDINGS

The parties proceeded to arbitration. After ten days of presenting evidence and arguing the case, the arbitrator issued her final decision. It included findings of fact and conclusions of law. The arbitrator concluded that just cause did not support Billings's demotion, but just cause supported Billings's termination based on unsatisfactory performance, insubordination, departures from the truth, failure to perform, unbecoming conduct, unsatisfactory performance, and leaving his duty post.

The CBA provided that the arbitrator's decisions would be "final and binding on both parties." CP at 153.

2

III.     SUPERIOR COURT PROCEEDINGS

On November 25, 2015, Billings filed a complaint against Steilacoom, and Schaub and Loveless as employees of Steilacoom, alleging (1) discrimination and retaliation because of Billings's disability, lawful union activities, and/or medical leave; (2) negligence and/or intentional infliction of emotional distress; (3) violation of title 41 and/or 49 RCW; (4) negligent retention and supervision of those who retaliated against Billings; and (5) wrongful termination in violation of established public policy.   Billings alleged damages including loss of earnings, compensation, and benefits, mental and emotional trauma, pain and suffering, loss of reputation, and other damages.   Billings also requested costs and attorney fees.

Steilacoom, Loveless, and Schaub denied Billings's allegations.   They also asserted affirmative defenses including improper service of process, res judicata, collateral estoppel, exhaustion of administrative remedies, intentional conduct, comparative fault, discretionary immunity, statute of limitations, failure to state a claim, good faith immunity, mitigation of damages, setoff, privilege, and failure to comply with chapter 4.96 RCW.   They requested that the complaint be dismissed with prejudice.   They also requested costs and attorney fees.

A.     MOTION FOR SUMMARY JUDGMENT

Steilacoom, Loveless, and Schaub filed a motion for summary judgment dismissal of all of Billings's claims pursuant to CR 56.   They argued there existed no genuine issue of material fact and summary judgment was appropriate.   Steilacoom, Loveless, and Schaub argued that any claims prior to Billings's September 2012 termination were barred by the statute of limitations.[1]   In addition, they argued that collateral estoppel barred Billings from relitigating whether they had a legitimate basis to terminate his employment, because the essential elements of Billings's claims

---

[1] Billings conceded this point.

had been fully litigated and determined in the arbitrator's ruling. They further argued that collateral estoppel also precluded Billings from proceeding on his public policy wrongful termination claims and his chapter 49.60 RCW discrimination claims under the test set out in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973). They argued that collateral estoppel precluded Billings from proceeding on retaliation claims.

Steilacoom, Loveless, and Schaub argued that if the claims were not barred by collateral estoppel, the negligence claims should be dismissed because employers do not have a duty to avoid emotional distress and the employees acted within the scope of their employment. Finally, Steilacoom, Loveless, and Schaub argue that the intentional infliction of emotional distress claim should be dismissed because Billings's termination did not rise to the level of outrage. As support for the motion for summary judgment, Steilacoom, Schaub, and Loveless included exhibits from the arbitration, and the arbitration award.

Billings opposed the motion for summary judgment and argued that collateral estoppel should not preclude any of his claims because it would cause an injustice. He also argued that his claim for wrongful termination in violation of public policy remained viable. Billings submitted a declaration opposing the motion, listing numerous alleged factual inaccuracies in the arbitration award.

Billings also included a declaration of Glen Carpenter, a sergeant and defensive tactics instructor with the Pierce County Sheriff's Office. Carpenter stated that Schaub told him about an internal affairs investigation of Billings. Carpenter gave Schaub his opinion as to whether Billings would have been justified to use deadly force during a certain stop. Carpenter stated that although Billings would have been justified to use deadly force, Billings did not utilize the best tactical

4

approach or technique that would be commonly trained. Carpenter concluded that Billings's stop did not constitute an unlawful use of force.

Steilacoom, Schaub, and Loveless filed a motion to strike Carpenter's declaration. They argued that it was irrelevant, duplicative, and inadmissible. They further argued that Carpenter's declaration did not create an issue of material fact because the arbitrator did not conclude that Billings violated the department's policy against unsatisfactory performance based on tactics used, nor was Billings terminated for using excessive force. However, the arbitrator found that Billings violated the department's policy for his using unsafe tactics in the stop, not for the use of force. The trial court granted the motion to strike Carpenter's declaration.

Billings filed a motion to amend his complaint to add a cause of action for First Amendment violations under 42 U.S.C. § 1983. The court granted the motion.

The trial court granted Steilacoom, Schaub, and Loveless's motion for summary judgment and dismissal of all the claims. Billings appeals.

ANALYSIS

I.     SUMMARY JUDGMENT

Billings argues that the trial court erred by granting Steilacoom, Schaub, and Loveless's motion for summary judgment because his claims were not barred by collateral estoppel. He also argues that collateral estoppel should not be applied to an unreviewable, labor arbitration decision.

We disagree with Billings and conclude that collateral estoppel bars all of Billings's state law claims. We need not decide whether his 42 U.S.C. § 1983 claim is precluded by collateral estoppel. Because there exists no genuine issue of material fact, the court properly granted summary judgment.

A.  LEGAL PRINCIPLES

Summary judgment is appropriate where there are no genuine issues of material facts, and the moving party is entitled to judgment as a matter of law. CR 56(c); *McGowan v. State*, 148 Wn.2d 278, 289, 60 P.3d 67 (2002). The appellate court engages in the same inquiry as the trial court, with questions of law reviewed de novo and the facts and all reasonable inferences from the facts viewed in the light most favorable to the nonmoving party. *Williamson, Inc. v. Calibre Homes, Inc.*, 147 Wn.2d 394, 398, 54 P.3d 1186 (2002).

We conduct de novo review on whether collateral estoppel applies to bar relitigation of an issue. *State v. Vasquez*, 109 Wn. App. 310, 314, 34 P.3d 1255 (2001).

"'The doctrine of collateral estoppel is well known to Washington law as a means of preventing the endless relitigation of issues already actually litigated by the parties and decided by a competent tribunal. Collateral estoppel promotes judicial economy and prevents inconvenience, and even harassment, of parties.'" *Hadley v. Maxwell*, 144 Wn.2d 306, 311, 27 P.3d 600 (2001) (quoting *Reninger v. Dep't of Corr.*, 134 Wn.2d 437, 449, 951 P.2d 782 (1998)). It is distinguished from claim preclusion, or res judicata, "'in that, instead of preventing a second assertion of the same claim or cause of action, it prevents a second litigation of *issues* between the parties, even though a different claim or cause of action is asserted.'" *Rains v. State*, 100 Wn.2d 660, 665, 674 P.2d 165 (1983) (emphasis added) (quoting *Seattle-First Nat'l Bank v. Kawachi*, 91 Wn.2d 223, 225-26, 588 P.2d 725 (1978)). Res judicata "is intended to prevent relitigation of an entire cause of action and collateral estoppel is intended to prevent retrial of one or more of the crucial issues or determinative facts determined in previous litigation." *Luisi Truck Lines, Inc. v. Wash. Utils. & Transp. Comm'n*, 72 Wn.2d 887, 894, 435 P.2d 654 (1967). Yet, "collateral estoppel is not a technical defense to prevent a fair and full hearing on the merits of the issues to

be tried." *Hadley*, 144 Wn.2d at 311. "'Washington courts focus on whether the parties to the earlier proceeding had a full and fair hearing on the issue.'" *Hadley*, 144 Wn.2d at 311 (quoting *Neff v. Allstate Ins. Co.*, 70 Wn. App. 796, 801, 855 P.2d 1223 (1993)).

Washington courts have developed a four-part test to analyze whether a previous litigation should have a collateral estoppel effect on a subsequent litigation. Collateral estoppel requires:

> "(1) identical issues; (2) a final judgment on the merits; (3) the party against whom the plea is asserted must have been a party to or in privity with a party to the prior adjudication; and (4) application of the doctrine must not work an injustice on the party against whom the doctrine is to be applied."

*Hadley*, 144 Wn.2d at 311-12 (internal quotation marks omitted) (quoting *Southcenter Joint Venture v. Nat'l Democratic Policy Comm'n*, 113 Wn.2d 413, 418, 780 P.2d 1282 (1989)).

> [A]pplication of collateral estoppel is limited to situations where the issue presented in the second proceeding is *identical in all respects* to an issue decided in the prior proceeding, and "where the controlling facts and applicable legal rules remain unchanged." Further, issue preclusion is appropriate only if the issue raised in the second case "involves substantially the same bundle of legal principles that contributed to the rendering of the first judgment," even if the facts and the issue are identical.

*LeMond v. Dep't of Licensing*, 143 Wn. App. 797, 805, 180 P.3d 829 (2008) (citations omitted) (emphasis added) (quoting *Standlee v. Smith*, 83 Wn.2d 405, 408, 518 P.2d 721 (1974)).

### B. FINAL JUDGMENT ON THE MERITS

Billings argues that the arbitration award is not a final judgment on the merits because the arbitrator's decision was "never reduced to a judgment" and it constitutes "hearsay." Br. of Appellant at 22-23. We disagree.

"Washington courts have repeatedly expressed judicial approval of the policy underlying arbitration of disputes." *Godfrey v. Hartford Cas. Ins. Co.*, 142 Wn.2d 885, 891, 16 P.3d 617 (2001). "We afford great deference to the decisions of a labor arbitrator." *Yakima County v. Yakima County Law Enf't Officers Guild*, 157 Wn. App. 304, 317, 237 P.3d 316 (2010). "Public

policy here in Washington strongly favors the finality of arbitration awards." *Yakima County*, 157 Wn. App. at 317. The "arbitrator is the final judge of both the facts and the law." *Yakima County*, 157 Wn. App. at 318. "'Arbitration is attractive because it is a more expeditious and final alternative to litigation.'" *Godfrey*, 142 Wn.2d at 892 (quoting *Boyd v. Davis*, 127 Wn.2d 256, 262, 897 P.2d 1239 (1995)).

"Courts will review an arbitration decision only in certain limited circumstances, such as when an arbitrator has exceeded his or her legal authority." *Int'l Union of Operating Eng'rs, Local 286 v. Port of Seattle*, 176 Wn.2d 712, 720, 295 P.3d 736 (2013) (*Int'l Union, Local 286*). "To do otherwise would call into question the finality of arbitration decisions and undermine alternative dispute resolution." *Int'l Union, Local 286*, 176 Wn.2d at 720. "However, like any contract, an arbitration decision arising out of a collective bargaining agreement can be vacated if it violates public policy." *Int'l Union, Local 286*, 176 Wn.2d at 721. Arbitrators are confined to the interpretation and application of the CBA. *Yakima County*, 157 Wn. App. at 333.

The general rule is that "collateral estoppel does apply to issues resolved in arbitration, if the award is not challenged as a final judgment on the merits." *State Farm Mut. Auto. Ins. Co. v. Avery*, 114 Wn. App. 299, 308, 57 P.3d 300 (2002); *see also Robinson v. Hamed*, 62 Wn. App. 92, 96-97, 813 P.2d 171 (1991).

Billings cites to *Channel v. Mills*, 61 Wn. App. 295, 299, 810 P.2d 67 (1991), to support his argument that an arbitration award is not a final judgment. In *Channel*, we expressed our disagreement with Division I, and held that collateral estoppel did not preclude an issue because "an arbitration award is not the same thing as a final judgment of a court." 61 Wn. App. at 299. Part of the reasoning was "Washington's statutory scheme for arbitration, RCW 7.04, provides a rather elaborate process for the confirmation, vacation, correction or modification of an arbitration

award in court and for the entry of a judgment which conforms with the court's final determination." 61 Wn. App. at 299. Because of the language of the statute, *Channel* concluded that from a plain reading, "the Legislature did not consider an award in arbitration to be equivalent to a final judgment of a court. If it had it would have been unnecessary to provide a process to reduce the award to judgment." *Channel*, 61 Wn. App. at 300. The court analogized an arbitration award to that of a jury verdict. *Channel*, 61 Wn. App. at 300; *see also Larsen v. Farmers Ins. Co.*, 80 Wn. App. 259, 266, 909 P.2d 935 (1996).

However, the statutes relied on in *Channel* were repealed and codified under Washington's arbitration act. Title 7.04A RCW. This chapter governs the arbitration process and enforcement of arbitration awards. Title 7.04A RCW. Generally, the law remains unchanged in that upon receipt of an arbitration award, a party may move to modify, correct, vacate, or confirm the award. RCW 7.04A.220. A party may file a motion for an order confirming the award. RCW 7.04A.220. When the superior court enters an order confirming the arbitration award, the court must enter a judgment on the award. RCW 7.04A.250(1).

Yet, the reasoning in *Channel* does not apply to Billings's case. RCW 7.04A.030(4) very clearly states: "This chapter does not apply to any arbitration agreement between employers and employees or between employers and associations of employees." Accordingly, *Channel*'s reasoning would not apply to this case because the statute does not apply to the CBA. The parties agreed in the CBA that if the grievance was not resolved by the parties, the SOA could appeal the decision to a neutral arbitrator. The CBA also provided that the arbitrator's written decision would

9

be "final and binding." CP at 153. Under the CBA then, the parties agreed that the arbitration award would constitute a final judgment.[2]

C.    PARTIES

Billings argues that the parties are not identical. We disagree.

In a labor arbitration proceeding, a union represents a plaintiff-employee. When an employee's interest is represented by his union, he is in privity with the union. *Christensen v. Grant County Hosp. Dist. No. 1*, 152 Wn.2d 299, 308 n.5, 96 P.3d 957 (2004).

Here, Billings's union represented his interest in the arbitration proceedings, and thus, he was in privity with the union. Because Billings was in privity with the union, the parties are identical.

D.    WORKING AN INJUSTICE

Billings argues that the application of collateral estoppel to bar his claims would work an injustice against him because he would be denied a right to a trial by jury on his claims. He argues that he was not provided notice that an arbitration decision would have a preclusive effect on his right to privately pursue his claims outside the CBA. Billings also argues that he was not informed that the arbitration could have a preclusive effect, he was not allowed to raise issues of discriminatory hiring and waste, and the union was poorly funded.

"The injustice component is generally concerned with procedural, not substantive irregularity." *Christensen*, 152 Wn.2d at 309. "This is consistent with the requirement that the

---

[2] In addition, three unpublished cases from this court explicitly state that an arbitration award is a final judgment on the merits. We find their reasoning persuasive. *Leibsohn Prop. Advisors Inc. v. Colliers Int'l Realty Advisors (USA), Inc.*, No. 69445-6-I (Wash. Ct. App. Oct. 28, 2013) (unpublished), https://www.courts.wa.gov/opinions/pdf/694456.pdf; *Gear Athletics LLC v. Engstrom Properties LLC*, noted at 163 Wn. App. 1017 (2011); *Scheer–Erickson v. Haines*, noted at 120 Wn. App. 1042 (2004) (citing RCW 7.04.210 (repealed); Dunlap v. Wild, 22 Wn. App. 583, 591, 591 P.2d 834 (1979)).

party against whom the doctrine is asserted must have had a full and fair opportunity to litigate the issue in the first forum." *Christensen*, 152 Wn.2d at 309. It may be improper for collateral estoppel to preclude an issue where the issue is first determined after an informal, expedited hearing with relaxed evidentiary standards. *Christensen*, 152 Wn.2d at 309. "In addition, disparity of relief may be so great that a party would be unlikely to have vigorously litigated the crucial issues in the first forum and so it would be unfair to preclude relitigation of the issues in a second forum." *Christensen*, 152 Wn.2d at 309.

However, in determining procedural deficiencies, courts have concluded that "an administrative decision may have preclusive effect on a subsequent civil action where the parties had ample incentive to litigate issues even though the remedies available in the two arenas were not identical." *Thompson v. Dep't of Licensing*, 138 Wn.2d 783, 796, 982 P.2d 601 (1999). *Thompson* noted, "the unfairness of permitting an adjudication in an informal administrative setting, for example, to bar later criminal prosecutions." 138 Wn.2d at 796. We also compare to see if there are differences in the burden of proof in the respective proceedings. *Thompson*, 138 Wn.2d at 796.

Here, the SOA and Billings had the opportunity to and did fully litigate the issues of his termination before the arbitrator. The hearing included ten days of testimony. Billings testified on his own behalf. On his behalf, the SOA submitted briefing to support its arguments. Additionally, the clear and convincing burden of proof before the arbitrator was higher than the preponderance of the evidence burden in a civil proceeding. *Dep't of Labor & Indus. v. Rowley*, 185 Wn.2d 186, 208, 378 P.3d 139 (2016).

In addition, Billings's claim that he would be denied a right to a jury trial if collateral estoppel precludes the claims is without merit because the parties agreed to binding arbitration in

the CBA. Further, we note that Billings failed to file a jury demand in his civil case before the deadline.

Finally, because the crucial issue in determining the injustice element is whether Billings had a full and fair opportunity to litigate the issue in the arbitration, we consider whether the other arguments Billings raised involve procedural defects. *Christensen*, 152 Wn.2d at 309. Billings alleged the SOA's lack of funding, his lack of knowledge that the arbitration could have a preclusive effect, and his inability to raise issues of discriminatory hiring and waste are all distinguishable from other examples of procedural defects discussed above.

None of the arguments Billings raised constitutes a procedural defect. Billings's arguments do not support his claim that he did not have a full and fair opportunity to litigate the issues. The SOA hired an attorney to represent his interests in the arbitration, despite Billings's claim that it was poorly funded. Billings also testified at the hearing. In addition, whether the SOA failed to advise Billings about collateral estoppel does not preclude the application of collateral estoppel.[3] Finally, Billings would have been unable to testify about issues of discriminatory hiring and waste because it was irrelevant to the issues at arbitration: whether just cause existed for his demotion and termination.

---

[3] Billings does not cite to any legal authority to support his contention that it should preclude the application of collateral estoppel. RAP 10.3(a)(6) directs each party to supply in its brief, "argument in support of the issues presented for review, together with citations to legal authority and references to relevant parts of the record." We do "not consider conclusory arguments that are unsupported by citation to authority." *Brownfield v. City of Yakima*, 178 Wn. App. 850, 876, 316 P.3d 520 (2013). "Passing treatment of an issue or lack of reasoned argument is insufficient to merit judicial consideration." *Brownfield*, 178 Wn. App. at 876. Accordingly, we need not consider this argument.

Accordingly, we conclude that applying collateral estoppel in this case would not cause an injustice against Billings because he had a full and fair opportunity to litigate the issues Steilacoom, Schaub, and Loveless argue are precluded.

E.    IDENTICAL ISSUES

Billings argues that the issues are not identical, but he does not provide clear, substantive argument why they are not identical.

Steilacoom, Schaub, and Loveless argue that all of the issues are identical because the arbitrator found just cause to terminate Billings, and each of the claims asserted by Billings require a determination of whether just cause existed.  In addition, they argue that because the arbitrator found just cause, each of the claims asserted by Billings fails as a matter of law.  Finally, they argue that Billings failed to respond to the substance of application of collateral estoppel or provide support for his claims related to his public policy wrongful discharge claim or his First Amendment claim and thus, we should not consider those claims.

As previously stated, RAP 10.3(a)(6) directs each party to supply, in its brief, "argument in support of the issues presented for review, together with citations to legal authority and references to relevant parts of the record."  Failure to provide argument and citation to authority in support of an assignment of error precludes appellate consideration under RAP 10.3(a)(6).  *Cowiche Canyon Conservancy v. Bosley*, 118 Wn.2d 801, 809, 828 P.2d 549 (1992).  "[P]assing treatment of an issue or lack of reasoned argument is insufficient to merit judicial consideration."  *West v. Thurston County*, 168 Wn. App. 162, 187, 275 P.3d 1200 (2012) (quoting *Holland v. City of Tacoma*, 90 Wn. App. 533, 538, 954 P.2d 290 (1998)).  Although Billings failed to provide clear, substantive argument for his argument that his public policy discharge claim or his § 1983 claim are not identical to the issues determined by the arbitrator, we address them.

13

1.　　Washington Law Against Discrimination (WLAD), Chapter 49.60 RCW

Billings argues that the issues presented in a WLAD claim are not identical to those determined by the arbitrator because the action filed in superior court involves application of a different legal standard. Billings argues that he properly supported his public policy claims of discrimination and retaliation based on his union activities. He also argues that WLAD protects a union employee's rights to pursue both arbitration and his WLAD claims.

Billings alleged a disability discrimination and retaliation claim that Steilacoom terminated him because he injured his hand and took medical leave during his pending investigations.

i.　　Election of Remedies

The election of remedies provision of WLAD does not prohibit the application of collateral estoppel. RCW 49.60.020 provides:

> The provisions of this chapter shall be construed liberally for the accomplishment of the purposes thereof. Nothing contained in this chapter shall be deemed to repeal any of the provisions of any other law of this state relating to discrimination because of race, color, creed, national origin, sex, marital status, sexual orientation, age, honorably discharged veteran or military status, or the presence of any sensory, mental, or physical disability, other than a law which purports to require or permit doing any act which is an unfair practice under this chapter. Nor shall anything herein contained be construed to deny the right to any person to institute any action or pursue any civil or criminal remedy based upon an alleged violation of his or her civil rights.

RCW 49.60.030(2) provides the basis for the suit:

> Any person deeming himself or herself injured by any act in violation of this chapter shall have a civil action in a court of competent jurisdiction to enjoin further violations, or to recover the actual damages sustained by the person, or both, together with the cost of suit including reasonable attorneys' fees or any other appropriate remedy authorized by this chapter or the United States Civil Rights Act of 1964 as amended, or the Federal Fair Housing Amendments Act of 1988 (42 U.S.C. Sec. 3601 et seq.).

Yet, cases have established that the "existence of a common law or statutory basis for filing a civil action does not itself mean that the doctrine of collateral estoppel may not be applied in the

civil case." *Carver v. State*, 147 Wn. App. 567, 573, 197 P.3d 678 (2008). "'Simply because the tort action rests on public policy does not mean that public policy dictates that collateral estoppel should never be applied.'" *Carver*, 147 Wn. App. at 573 (quoting *Christensen*, 152 Wn.2d at 313). The legislature has not chosen to bar issue preclusion in the WLAD. Chapter 49.60 RCW. Accordingly, "collateral estoppel may be applicable to an action brought under our antidiscrimination laws." *Carver*, 147 Wn. App. at 574.

### ii.    Discrimination

We next consider whether the issues raised in a claim under chapter 49.60 RCW are identical to the issues upon which the arbitrator ruled.

RCW 49.60.180(2) makes it unlawful for employers "[t]o discharge or bar any person from employment because of age, sex, marital status, sexual orientation, race, creed, color, national origin, honorably discharged veteran or military status, or the presence of any sensory, mental, or physical disability."

To establish a prima facie case of discrimination by disparate treatment, a plaintiff must show that (1) he belongs to a protected class, (2) he was treated less favorably in the terms or conditions of his employment (3) than a similarly situated, nonprotected employee, and (4) he and the nonprotected employee were doing substantially the same work; if the employer then proffers a legitimate, nondiscriminatory reason for its action, then (5) the plaintiff must produce evidence indicating that the employer's reason is pretextual. *Johnson v. Dep't of Soc. & Health Servs.*, 80 Wn. App. 212, 226-27, 907 P.2d 1223 (1996); *see also Crownover v. Dep't of Transp.*, 165 Wn. App. 131, 147, 265 P.3d 971 (2011).

"The employee shows pretext if the proffered justifications have no basis in fact, are unreasonable grounds upon which to base the termination, or were not motivating factors in

employment decisions for other similarly-situated employees." *Griffith v. Schnitzer Steel Indus., Inc.*, 128 Wn. App. 438, 447, 115 P.3d 1065 (2005). "An employee may satisfy the pretext prong by offering sufficient evidence to create a genuine issue of material fact either (1) that the defendant's reason is pretextual or (2) that although the employer's stated reason is legitimate, discrimination nevertheless was a substantial factor motivating the employer." *Scrivener v. Clark Coll.*, 181 Wn.2d 439, 446-47, 334 P.3d 541 (2014). An employee need not produce direct evidence to show pretext; circumstantial and inferential evidence can be sufficient. *Griffith*, 128 Wn. App. at 447. "An employer may be motivated by multiple purposes, both legitimate and illegitimate, when making employment decisions and still be liable under the WLAD." *Scrivener*, 181 Wn.2d at 447. But an employee's speculation or subjective belief on her performance is irrelevant. *Griffith*, 128 Wn. App. at 447.

We consider whether the issues in the arbitration were identical to those in a WLAD claim based on the burden-shifting framework in *McDonnell Douglas Corp.*, 411 U.S. 792. The court in *Dumont v. City of Seattle*, summarized the test:

> Under this burden-shifting framework, "[t]he plaintiff bears the first intermediate burden, namely, that of setting forth a prima facie case of unlawful discrimination." "If a prima facie case is established, a legally mandatory, rebuttable presumption' of discrimination temporarily takes hold and the evidentiary burden shifts to the defendant to produce admissible evidence of a legitimate, nondiscriminatory explanation for the adverse employment action sufficient to 'raise[ ] a genuine issue of fact as to whether [the defendant] discriminated against the plaintiff." Finally, "[o]nce the presumption is removed, the burden of proof shifts back to the plaintiff, who must then be afforded a fair opportunity to show that [defendant's] stated reason for [the adverse action] was in fact pretext." Only if the plaintiff proves incapable of making this showing does "the defendant become[ ] entitled to judgment as a matter of law."

148 Wn. App. 850, 862, 200 P.3d 764 (2009) (alternations in original) (citations omitted) (quoting *Hill v. BCTI Income Fund–I*, 144 Wn.2d 172, 181, 182, 23 P.3d 440 (2001), *overruled on other grounds by McClarty v. Totem Elec.*, 157 Wn.2d 214, 137 P.3d 844 (2006)).

The arbitrator concluded that just cause existed for Billings's termination. Therefore, a "legitimate, nondiscriminatory explanation" for his termination has already been litigated. This issue is identical to an issue that is the crux of this cause of action. But even if we assume that Billings met his initial burden of proving a prima facie case of discrimination, he failed to produce evidence indicating that Steilacoom, Schaub, and Loveless's reason for discharging him was merely a pretext. Billings did not present any evidence that the numerous reasons for his dismissal were unworthy of belief. Billings presented no evidence at summary judgment showing a pretext for his discharge. Billing only submitted a declaration in which he discussed his perception of events. Further, he does not argue anything about a pretext in his briefing on appeal.

Accordingly, we conclude that summary judgment on this issue was appropriate because the issues were identical, precluding the issues under collateral estoppel, and based on the arbitrator's findings and conclusions, Billings's WLAD claim would fail as a matter of law.

### iii. Retaliation

Billings seems to argue that Steilacoom, Schaub, and Loveless retaliated against him for his union activities, apart from his § 1983 claim.[4]

The arbitrator stated that she would not make a legal conclusion, because:

> The Public Employment Relations Commission prohibits discrimination due to union activities by public employers against their employees. A different legal standard is used in those cases than the standards used to evaluate just cause cases. If Billings believes that he was discriminated against because of his union activities, he should bring that claim in a different forum.

CP at 1450.

---

[4] Billings also focuses on the portion of the arbitrator's decision were she declined to rule on the ultimate issue of whether Steilacoom retaliated against him for union activities.

Although the arbitrator chose not to issue an ultimate legal conclusion regarding a "union retaliation" claim, the issues she did make legal conclusions on act as a bar to that claim at summary judgment. The same analysis from the WLAD section above also applies to the retaliation claim alleged by Billings.

"An employer may not retaliate against an employee for opposing the employer's discriminatory practices or for filing a discrimination claim against the employer." *Milligan v. Thompson*, 110 Wn. App. 628, 638, 42 P.3d 418 (2002); RCW 49.60.210. "The burden-shifting scheme is the same as for discrimination claims." *Milligan*, 110 Wn. App. at 638.

To establish a prima case of retaliation, a plaintiff must show that (1) he engaged in a statutorily protected activity, (2) the employer took an adverse employment action against him, and (3) there is a causal connection between his activity and the employer's adverse action. *Milligan*, 110 Wn. App. at 638. "[W]hen the employee's evidence of pretext is weak or the employer's nonretaliatory evidence is strong, summary judgment is appropriate." *Milligan*, 110 Wn. App. at 638-39.

Even if we assume that Billings could establish a prima facie case of retaliation, he failed to show that Steilacoom, Schaub, and Loveless used their justifications for his termination as a pretext to cover retaliation. He did not provide any evidence at summary judgment that could link his discharge with his union activities. The arbitrator concluded that multiple bases existed as just cause to support Billings's termination including: unsatisfactory performance, insubordination, departures from the truth, failure to perform, unbecoming conduct, unsatisfactory performance, and leaving his duty post.

Because Billings's employer's nonretaliatory evidence is strong, and he failed to present evidence of pretext, we conclude that summary judgment was appropriate. Therefore, we conclude

that the trial court did not err by granting summary judgment because no issue of material fact remained and Billings's retaliation claim could not succeed as a matter of law.

> 2. Public Policy Wrongful Discharge[5]

Billings argues that the trial court erred by granting summary judgment on his public policy wrongful discharge claim because he pled a viable claim. He seems to argue that the related public policy concerns were his role in the union opposing unlawful activity, waste of taxpayer money, and his concerns about the town that violated WLAD.

"One narrow exception to the general at-will employment rule [in Washington] prohibits an employer from discharging an employee 'when the termination would frustrate a clear manifestation of public policy.'" *Roe v. TeleTech Customer Care Mgmt. (Colorado) LLC*, 171 Wn.2d 736, 755, 257 P.3d 586 (2011) (quoting *Ford v. Trendwest Resorts, Inc.*, 146 Wn.2d 146, 153, 43 P.3d 1223 (2002)). "The tort action is a 'narrow public policy exception' to the at-will employment doctrine that balances the employee's interest in job security and the employer's interest in making personnel decisions without fear of liability." *Roe*, 171 Wn.2d at 755 (quoting *Thompson v. St. Regis Paper Co.*, 102 Wn.2d 219, 232, 685 P.2d 1081 (1984)). A public policy wrongful discharge action may arise when:

> "(1) where employees are fired for refusing to commit an illegal act; (2) where employees are fired for performing a public duty or obligation, such as serving jury duty; (3) where employees are fired for exercising a legal right or privilege, such as filing workers' compensation claims; and (4) where employees are fired in retaliation for reporting employer misconduct, i.e., whistleblowing."

---

[5] Billings treats this claim as if it was dismissed pursuant to CR 12(b)(6) and cites the law related to that rule. Regardless, a CR 12(b)(6) motion to dismiss for failure to state a claim is treated as a motion for summary judgment when matters outside the pleadings are presented to and not excluded by the court. *Sea-Pac Co. v. United Food & Commercial Workers Local Union 44*, 103 Wn.2d 800, 802, 699 P.2d 217 (1985). "The motion must be denied unless it appears beyond doubt that plaintiff can prove no set of facts, consistent with the complaint, which would entitle the plaintiff to relief." *Sea-Pac*, 103 Wn.2d at 802.

*Roe*, 171 Wn.2d at 755 (quoting *Gardner v. Loomis Armored, Inc.*, 128 Wn.2d 931, 936, 913 P.2d 377 (1996)).

> Wrongful discharge in violation of public policy requires four elements:
>
> "(1) The plaintiffs must prove the existence of a clear public policy (the *clarity* element).
> (2) The plaintiffs must prove that discouraging the conduct in which they engaged would jeopardize the public policy (the *jeopardy* element).
> (3) The plaintiffs must prove that the public-policy-linked conduct caused the dismissal (the *causation* element).
> (4) The defendant must not be able to offer an overriding justification for the dismissal (the *absence of justification* element)."

*Roe*, 171 Wn.2d at 756 (quoting *Gardner*, 128 Wn.2d at 941).

In *Brownfield v. City of Yakima*, 178 Wn. App. 850, 869-70, 316 P.2d 520 (2013), the court held that a police officer was unable to establish the third element, causation, when a prior summary judgment ruling determined the officer was terminated for insubordination, or just cause. Here, the arbitrator determined this issue and ruled that Billings was terminated for just cause. Because Billings must prove that his protected union activity was a substantial factor in Steilacoom's decision to discharge him to succeed on his wrongful discharge claim, the issues are identical. *Christensen*, 152 Wn.2d at 308, n.5. Accordingly, we conclude that the issues are identical.

Further, for the same reasons he cannot establish the third element, Billings is also unable to prove the fourth element. Again, the arbitrator found that Billings was terminated for just cause; there existed an overriding justification for his dismissal even if he could prove the other elements. Thus, we conclude that the trial court did not err by granting summary judgment because Billings's claim fails as a matter of law.

### 3. First Amendment Retaliation Claim—42 U.S.C. § 1983

Billings argues that the issues in his First Amendment claim are not identical to the issues determined by the arbitrator. He argues that arbitration rulings cannot be applied under the doctrine of collateral estoppel to 42 U.S.C. § 1983 claims. Billings further argues that he properly supported his First Amendment claim with an articulation of matters of public concern.

In Washington, it remains unresolved as to whether an arbitration decision can preclude a § 1983 suit on the basis of collateral estoppel.[6] We need not decide whether the arbitration decision precludes the § 1983 action because, based on the undisputed material facts, Billings presented insufficient evidence to establish a prima facie case under § 1983. Because Billings failed to present a prima facie case under § 1983, the trial court properly granted summary judgment on this issue.

42 U.S.C. § 1983 reads:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

"Thus, in order to proceed in a § 1983 action, a plaintiff must show that some person deprived plaintiff of a federal constitutional or statutory right, and that person must have been acting under color of state law." *Lutheran Day Care v. Snohomish County*, 119 Wn.2d 91, 117, 829 P.2d 746 (1992).

---

[6] Our courts have clearly established that they may apply collateral estoppel to determinations in administrative hearings. *Shoemaker v. City of Bremerton*, 109 Wn.2d 504, 512, 745 P.2d 858 (1987) (while the commission could not have decided the § 1983 civil rights claim, it may have decided a fact common to the administrative claim for reinstatement and the § 1983 claim); *see also White v. City of Pasadena*, 671 F.3d 918 (9th Cir. 2012).

The First Amendment states: "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; or abridging the freedom of speech, or of the press; or the right of the people peaceably to assemble, and to petition the Government for a redress of grievances." U.S. CONST. amend I.

Billings seemingly argues that his First Amendment right to free speech was violated because Steilacoom, Schaub, and Loveless fired him in retaliation for raising "issues of public concern." Br. of Appellant at 12.

To support a § 1983 claim, Billings must have showed that he spoke on a matter of public concern as a public citizen while acting outside the scope of his official duties. *Karl v. City of Mountlake Terrace*, 678 F.3d 1062, 1068 (9th Cir. 2012). Whether an employee's speech addresses a matter of public concern is a pure question of law that must be determined "by the content, form, and context of a given statement, as revealed by the whole record." *Connick v. Myers*, 461 U.S. 138, 147-48, 148 n.7, 103 S. Ct. 1684, 75 L. Ed. 2d 708 (1983). "[S]peech that deals with 'individual personnel disputes and grievances' and that would be of 'no relevance to the public's evaluation of the performance of governmental agencies' is generally not of 'public concern.'" *Coszalter v. City of Salem*, 320 F.3d 968, 973 (9th Cir. 2003) (quoting *McKinley v. City of Eloy*, 705 F.2d 1110, 1114 (9th Cir. 1983)). By contrast, "[s]peech involves a matter of public concern when it can fairly be considered to relate to 'any matter of political, social, or other concern to the community.'" *Johnson v. Multnomah County*, 48 F.3d 420, 422 (9th Cir. 1995) (quoting *Connick*, 461 U.S. at 146).

If the Billings met the initial burden, he would be required to prove that his filing of grievances against his superiors and his union activities was a "substantial factor" or a "motivating factor" in his dismissal. *Shoemaker*, 109 Wn.2d at 512. Then the burden would shift to the

government to establish that it had "legitimate administrative interests [that] outweigh[ed] the employee's First Amendment rights; or . . . [that it] would have taken the adverse employment action even absent the protected speech." *Karl*, 678 F.3d at 1068.

Because we sit in the same position as the trial court, we review the evidence presented at summary judgment. Billings seemed to argue that the complaints he made against Schaub constituted protected speech. He made complaints about hiring decisions and employment. Billings claimed that Schaub yelled profanities at him in front of peers, and subordinates. He filed a complaint alleging improper governmental action by Schaub. After his demotion, Billings filed a formal complaint against Schaub alleging retaliation. Finally, he filed three other grievances alleging Schaub was violating policies.

Billings did not support his argument that his actions constituted protected speech with evidence. Complaints over internal affairs are not necessarily of public concern or protected speech. *Connick*, 461 U.S. at 149. Billings failed to present evidence to meet the initial burden for a prima facie case under § 1983. Billings has not specified what protected speech he alleges from the basis of his claim. Because Billings did not produce evidence to raise a genuine issue of fact on whether the basis for this claim rested on protected speech, he failed to present evidence for a prima facie § 1983 claim.

Therefore, we conclude that the trial court did not err by granting summary judgment on the § 1983 claim. Billings failed to establish the elements of the claim.

We conclude that collateral estoppel barred Billings's state law claims, and the trial court did not err by granting the motion for summary judgment dismissal of the lawsuit.

II.    MOTION TO STRIKE CARPENTER DECLARATION

Billings assigned error to the trial court's granting Steilacoom, Schaub, and Loveless's motion to strike Carpenter's declaration.

As previously stated, RAP 10.3(a)(6) directs each party to supply, in its brief, "argument in support of the issues presented for review, together with citations to legal authority and references to relevant parts of the record." Billings failed to cite to authority or provide substantive argument as to why the trial court erred by striking Carpenter's declaration. However, we choose to address the issue.

We review the trial court's ruling on a motion to strike for an abuse of discretion. *Hanson Indus. Inc. v. Kutschkau*, 158 Wn. App. 278, 287, 239 P.3d 367 (2010). A court cannot consider inadmissible evidence when ruling on a summary judgment motion. *Kenco Enters. Nw., LLC v. Wiese*, 172 Wn. App. 607, 615, 291 P.3d 261 (2013).

ER 401 defines relevant evidence as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."

Here, Carpenter's declaration did not present relevant evidence. In the declaration, Carpenter discussed a traffic stop in which he determined Billings did not violate a certain policy. Whether Billings violated that specific policy in that incident was not relevant to the arguments at summary judgment. In addition, Steilacoom did not terminate Billings because of his use of excessive force. Rather, the arbitrator found that Billings violated the department policy against unsatisfactory performance for his use of unsafe tactics in the stop, not for the use of force. Accordingly, the declaration presented irrelevant evidence and the trial court did not abuse its discretion by granting the motion to strike Carpenter's declaration.

III.     ATTORNEY FEES

Billings requests an award of attorney fees pursuant to RCW 49.60.030(2), 42 U.S.C. §1988, and RAP 18.1.

RAP 18.1(a) provides that if "applicable law grants to a party the right to recover reasonable attorney fees or expenses on review before either the Court of Appeals or Supreme Court, the party must request the fees or expenses." A request for appellate attorney fees requires a party to include a separate section in her or his brief devoted to the request. RAP 18.1(b). "Argument and citation to authority are required under the rule to advise the court of the appropriate grounds for an award of attorney fees as costs." *Stiles v. Kearney*, 168 Wn. App. 250, 267, 277 P.3d 9 (2012). Because Billings's request for fees is unsupported by argument, we deny his request.

We affirm.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

_____
Melnick, J.

We concur:

_____
Bjorgen, C.J.

_____
Sutton, J.

25