197 P.3d 678 (2008)
Carol CARVER, a single person, Appellant,
v.
STATE of Washington, and the Washington State Department of Corrections, Respondents.
No. 27164-1-III.
Court of Appeals of Washington, Division 3.
November 25, 2008.
*679 Paul James Burns, Attorney at Law, Spokane, WA, for Appellant.
Carl Perry Warring, Washington State Atty. General, Spokane, WA, for Respondents.
KORSMO, J.
¶ 1 Appellant Carol Carver seeks review of the dismissal of her disability discrimination claim against her former employer, the Department of Corrections (DOC). The trial court found that a decision by the Personnel Appeals Board (Board) collaterally estopped her discrimination claim.[1] Ms. Carver contends the administrative agency decision could not and did not have a preclusive effect on her subsequent statutory employment discrimination claim. We agree with her in part and reverse the ruling below.

BACKGROUND
¶ 2 Ms. Carver was a corrections officer between 1995 and 2002. In 2002, she was voluntarily demoted to the position of office assistant. In 2003, she began having problems fulfilling her job duties and was interacting inappropriately with her supervisor and co-workers. Ms. Carver's job duties were thus significantly reduced, but she continued to struggle with her work performance.
¶ 3 As a result of Ms. Carver's alleged poor performance and inappropriate behavior, the prison's Superintendent, Maggie Miller-Stout, met with Ms. Carver. During the meeting, Ms. Miller-Stout observed that Ms. Carver was struggling to communicate and was unable to focus on the topics discussed. Ms. Miller-Stout believed it was important to determine whether Ms. Carver's behavior was willful or whether there was another underlying reason for her behavior and her work performance. She referred Ms. Carver to a psychologist, Dr. Thomas McKnight, for an independent examination.
¶ 4 Dr. McKnight evaluated Ms. Carver in December 2004. He opined that Ms. Carver's intellectual and problem solving functions were impaired and that she suffered from dementia. He concluded Ms. Carver was unfit to perform the office assistant job because she was unable to perform work requiring quick decision-making, multitasking, speed, and efficiency.
¶ 5 Based on Dr. McKnight's evaluation, Ms. Miller-Stout determined Ms. Carver could not perform the essential functions of her job even with the previous accommodations. A human resources consultant searched for, but was unable to find, alternative positions within DOC that did not require the skills that Ms. Carver was unable to perform.
*680 ¶ 6 In February 2005, Ms. Miller-Stout notified Ms. Carver that she would be terminated due to disability on April 29, 2005. Ms. Miller-Stout also notified Ms. Carver that the decision would be rescinded before the effective date, if she could provide a written statement from a licensed psychiatrist or neuropsychologist stating that she could perform the full range of essential functions of the office assistant position, with or without accommodation. Ms. Carver wrote a letter to Ms. Miller-Stout asking her to reconsider the decision, but she did not provide any medical documentation showing she could perform the job. Ms. Carver was then terminated due to disability.
¶ 7 Ms. Carver appealed to the Board. She contacted her union representative and was assigned an attorney to assist her in her appeal. She spoke with her attorney on the phone, but never met with the attorney. Prior to the hearing, her attorney presented her with a settlement offer from DOC. Ms. Carver rejected the offer. Her attorney then said that she could no longer represent Ms. Carver. Ms. Carver appeared unrepresented at her hearing before the Board.
¶ 8 On March 14, 2006, the Board denied Ms. Carver's appeal finding that the Department had provided credible evidence that Ms. Carver was unable to perform the essential duties of her job and that no accommodation could be provided which would allow her to perform those duties. Ms. Carver did not seek judicial review of the Board's decision.
¶ 9 On January 23, 2007, Ms. Carver filed a discrimination suit against DOC under the Washington Law Against Discrimination (WLAD), chapter 49.60 RCW. DOC moved for summary judgment, arguing the Board's decision collaterally estopped Ms. Carver's discrimination claim. The trial court agreed and dismissed the action. Ms. Carver appeals.

ANALYSIS
¶ 10 This appeal presents two issues. First, Ms. Carver contends that collateral estoppel is not available in cases involving discrimination claims because the Legislature did not intend that a determination by the Board would preclude a subsequent court proceeding under the WLAD. Second, she argues that even if collateral estoppel applies in discrimination cases, the doctrine should not be applied in her case.
¶ 11 The governing standards for this appeal are well settled. This court reviews a summary judgment de novo, performing the same inquiry as the trial court. Lybbert v. Grant County, 141 Wash.2d 29, 34, 1 P.3d 1124 (2000). The facts, and all reasonable inferences to be drawn from them, are viewed in the light most favorable to the non-moving party. Id. If there is no genuine issue of material fact, summary judgment will be granted if the moving party is entitled to judgment as a matter of law. Id. Whether a decision of the Board precludes a suit under chapter 49.60 RCW is an issue of first impression.
¶ 12 Collateral estoppel precludes relitigation of the same issue in a subsequent action between the same parties. Christensen v. Grant County Hosp. Dist. No. 1, 152 Wash.2d 299, 306, 96 P.3d 957 (2004). In order to prevail on a claim of collateral estoppel, the party seeking application of the doctrine bears the burden of showing (1) identical issues, (2) a final judgment on the merits, (3) identity of the parties, and (4) that application of collateral estoppel will not work an injustice against the estopped party. Id. at 307, 96 P.3d 957. Moreover, when a party seeks to assert collateral estoppel based on an agency decision, the court must also consider (1) whether the agency acted within its competence, (2) the differences between procedures in the administrative proceeding and court procedures, and (3) public policy considerations. Id. at 308, 96 P.3d 957.
¶ 13 Estoppel and the WLAD. Ms. Carver contends that the choice of language in the WLAD shows legislative intent to allow both administrative and judicial remedies in discrimination cases. From that premise she argues that collateral estoppel cannot be applied in WLAD actions because it would negate the multiple fora provided by the Legislature. We disagree with her conclusion that the existence of multiple remedies *681 evidences legislative intent to preclude use of collateral estoppel.
¶ 14 RCW 49.60.030(2) provides:
Any person deeming himself or herself injured by any act in violation of this chapter shall have a civil action in a court of competent jurisdiction to enjoin further violations, or to recover the actual damages sustained by the person, or both, together with the cost of suit including reasonable attorneys' fees or any other appropriate remedy authorized by this chapter or the United States Civil Rights Act of 1964 as amended, or the Federal Fair Housing Amendments Act of 1988 (42 U.S.C. Sec. 3601 et seq.).
¶ 15 Emphasizing the statute's affirmative grant of a civil court action, appellant argues that the Legislature must have intended that the grant not be limited or even precluded by an administrative determination. However, the Washington Supreme Court has held on several occasions that administrative decisions may have preclusive effect in subsequent civil litigation. Christensen, 152 Wash.2d at 307, 96 P.3d 957; Reninger v. Dep't of Corr., 134 Wash.2d 437, 449, 951 P.2d 782 (1998); Luisi Truck Lines, Inc. v. Wash. Utils. & Transp. Comm'n, 72 Wash.2d 887, 894, 435 P.2d 654 (1967). In Christensen, 152 Wash.2d at 321, 96 P.3d 957, the Court held that an employee's failed action before the Public Employees Relations Commission collaterally estopped him from bringing a wrongful discharge claim in superior court. The Christensen court noted "[t]here is nothing inherently unfair about [precluding relitigation of an issue] provided the party has the full and fair opportunity to litigate, there is no significant disparity of relief, and all the other requirements of collateral estoppel are satisfied." Id. at 313, 96 P.3d 957.
¶ 16 The noted cases establish that the existence of a common law or statutory basis for filing a civil action does not itself mean that the doctrine of collateral estoppel may not be applied in the civil case. As Christensen succinctly put it: "Simply because the tort action rests on public policy does not mean that public policy dictates that collateral estoppel should never be applied." Id.
¶ 17 The Legislature has chosen in some circumstances to limit application of the doctrine in a civil action related to an earlier administrative proceeding. In the area of employment security, for instance, RCW 50.32.097 provides:
Any finding, determination, conclusion, declaration, or final order made by the commissioner, or his or her representative or delegate, or by an appeal tribunal, administrative law judge, reviewing officer, or other agent of the department for the purposes of Title 50 RCW, shall not be conclusive, nor binding, nor admissible as evidence in any separate action outside the scope of Title 50 RCW between an individual and the individual's present or prior employer before an arbitrator, court, or judge of this state or the United States, regardless of whether the prior action was between the same or related parties or involved the same facts or was reviewed pursuant to RCW 50.32.120.
¶ 18 The Legislature knows how to bar issue preclusion when it wants to do so. It has not chosen to do so in the WLAD. Accordingly, in light of the authorities cited, we conclude that collateral estoppel may be applicable to an action brought under our anti-discrimination laws.[2] The trial court correctly concluded that collateral estoppel was potentially applicable to this action.
¶ 19 Application of Collateral Estoppel. While we agree that collateral estoppel can be applied to a WLAD action, we do not believe DOC has established that the doctrine should be applied in this case. In particular, we do not believe that DOC met its burden of establishing that it would not work an injustice to apply collateral estoppel against Ms. Carver.
¶ 20 The Christensen court noted that this component of the collateral estoppel doctrine *682 largely focuses on public policy and the procedural fairness of the administrative proceeding. 152 Wash.2d at 317-318, 96 P.3d 957. However, we do not believe those factors are the exclusive focus of the requirement. Here, it is true that Ms. Carver was the one, albeit while she was still represented by counsel through her union, who began the administrative appeal to the Board. DOC also notes that Ms. Carver has not argued that there were procedural irregularities during the Board hearing. These factors suggest that it would not be unjust to apply collateral estoppel to this case.
¶ 21 Nonetheless, we are concerned here with the fact that Ms. Carver represented herself after DOC itself had concluded that she suffered from dementia to the extent that she could not even perform basic office work and that there was no position in the entire department she could hold. Ms. Carver was unrepresented by counsel at the Board hearing. Although a pro se litigant is generally held to the same standard as an attorney, Batten v. Abrams, 28 Wash.App. 737, 739 n. 1, 626 P.2d 984, review denied, 95 Wash.2d 1033 (1981), that is not the case when a pro se plaintiff also suffers from a significant mental disability. "[O]ne who is arguably incapable of understanding the law and legal proceedings can hardly be held to have been afforded a fair hearing." Cruz v. Root, 932 F.Supp. 66, 70 (W.D.N.Y.1996); see also West v. Ruff, 961 F.2d 1064, 1065-66 (2d Cir.1992) (reversing application of collateral estoppel because the issue could not be adequately presented pro se); Davis v. City of Charleston, 827 F.2d 317, 321 n. 3 (8th Cir. 1987) (finding that plaintiff "as a pro se litigant before the state court" did not have a full and fair opportunity to litigate the issue); Clark v. Dep't of Corr. Servs., 564 F.Supp. 787, 789 (S.D.N.Y.1983) (refusing to apply collateral estoppel not merely because of plaintiff's pro se status, but because of his confusion and ignorance about legal proceedings).
¶ 22 The combination of Ms. Carver's dementia and her pro se status has left this court with the firm conviction that it would work an injustice to apply collateral estoppel to this case. We do not have any reason to believe that Ms. Carver was treated unfairly at the hearing or that the Board would have reached a different result if she had been represented by counsel. Still, the fact that a mentally incompetent person was left to her own devices during the hearing leaves this court with the firm conviction that it would work an injustice to collaterally estop her discrimination claim.
¶ 23 Accordingly, we hold that DOC has not established the elements of collateral estoppel in this action. The judgment is reversed.
¶ WE CONCUR: SCHULTHEIS, C.J., and SWEENEY, J.
NOTES
[1] The Board ceased to exist on July 1, 2006 and its powers, duties and functions were transferred to the personnel resources board. RCW 41.06.111.
[2] Collateral estoppel is a two-way street. A victim of discrimination who prevailed in an administrative proceeding would have an opportunity to apply the doctrine offensively in the appropriate case. Thus, we do not see that public policy is offended by finding collateral estoppel applicable to WLAD actions.